**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| AF-SOUTHEAST, LLC, *et al.*, [1] | : Case No. 16-_____ (_____) |
| | : Joint Administration Requested |
| Debtors. | : **Hearing Date: TBD** |
| | : **Objection Deadline: TBD** |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) AUTHORIZING THE DEBTORS TO (I) RETAIN PMCM, LLC TO PROVIDE THE DEBTORS A CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL; AND (II) DESIGNATE MICHAEL E. JACOBY AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE**

AF-Southeast, LLC, *et al.* (the "Debtors"), the Debtors and debtors-in-possession in the above captioned cases, respectfully request the entry of an order pursuant to 11 U.S.C. §§ 105(a) and 363(b) authorizing the Debtors to (I) retain PMCM, LLC (together with employees of their professional-service provider affiliates, their subsidiaries or affiliates, and independent contractors, collectively, "PMCM")[2] to provide a Chief Restructuring Officer ("CRO") and certain Additional PMCM Personnel;[3] and (II) designate Michael E. Jacoby to serve as CRO for the Debtors, effective as of the Petition Date (as defined below) (the "Motion").  In support of this Motion, the Debtors rely upon and incorporate by reference herein the *Declaration of Michael E. Jacoby*, CTP, CCM, CMC (the "Jacoby Declaration"), a Senior Managing Director and Shareholder of PMCM, attached hereto as **Exhibit "A"**, and the *Declaration of Scott L.*

---

[1]  The Debtors in these cases, along with the last four digits of their federal tax identification numbers, are: (i) AF-Southeast, LLC (8002); (ii) Allied Fiber – Florida, LLC (8111); and (iii) Allied Fiber – Georgia, LLC (2935).

[2]  Employees of PMCM's subsidiaries or affiliates and/or select independent contractors are collectively defined in the Engagement Letter and herein as the "Additional PMCM Personnel".

[3] The CRO and Additional PMCM Personnel are collectively defined in the Engagement Letter and herein as the "PMCM Personnel".

*Drake in Support of First-Day Motions* (the "Drake Declaration").  In support thereof, the Debtors respectfully state as follows:

## JURISDICTION

1.       This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.       Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.       The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a) and 363(b).

## BACKGROUND

4.       On April 20, 2016 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").  The Debtors continue to operate and manage their businesses as debtors-in-possession in accordance with Section 1107 and 1108 of the Bankruptcy Code.  No trustee, examiner or creditors' committee has been appointed in these chapter 11 cases.

5.       The factual background relating to the commencement of these chapter 11 cases is set forth in detail in the Drake Declaration, which is fully incorporated herein by reference.

6.       As more fully set forth in the Drake Declaration, each of the Debtors are limited liability companies organized in the State of Delaware.  AF-Southeast, LLC is 100% owned by its parent, Allied Fiber, LLC ("Allied Fiber"), a non-debtor affiliate of the Debtors.  AF-Southeast, LLC is the sole member and 100% owner of Allied Fiber – Florida, LLC and Allied Fiber – Georgia, LLC, each of which are Debtors in these proceedings.

2

7.      The Debtors are engaged in the business of designing, constructing and operating an open access, physical layer, network-neutral colocation and dark fiber network.  The Debtors' dark fiber network provides long-haul, multi-access points, and short-haul dark fiber network systems, coupled with its owned colocation facilities to provide control of the underlying physical assets to all network operators who subscribe to the Debtors services.  The network is designed to link critical access points (international subsea cables) in the United States while also providing intermediate access points along the route for inclusion of local networks into the Debtors' network.  The combination of long-haul service with the capability to distribute traffic locally are intended to yield high customer demand and volume.

8.      The Debtors commenced these chapter 11 cases for the sole purpose of marketing valuable assets, while preparing for a going-concern sale that will maximize value to all of the Debtors' shareholders.

<b><u>RELIEF REQUESTED</u></b>

9.      As set forth in the Drake Declaration, the Debtors have suffered from recent financial difficulties.  In recognition of its need for sound restructuring advice, the Debtors, among other things, sought to retain a firm with substantial experience in the reorganization and restructuring of companies in financial distress.

10.     By this Motion, the Debtors seek entry of an order, under Bankruptcy Code sections 105(a) and 363(b) authorizing the Debtors to (I) retain PMCM to provide the Debtors with a CRO and certain Additional PMCM Personnel pursuant to the engagement letter executed on April 20, 2016, (the "Engagement Letter"), attached hereto as **Exhibit "B"**; and (II) designate Michael E. Jacoby as the Debtors' CRO, effective as of the Petition Date.

**BASIS FOR RELIEF**

11.     Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may, use, sell, or lease, other than in the ordinary course of business property of the estate." 11 U.S.C. § 363(b).

12.     Courts interpreting section 363(b) have held that transactions should be approved pursuant to this provision when, as here, they are supported by management's sound business judgment.  See, e.g., Meyers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (citing Fulton State Bankr. v. Schipper (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991)); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063 (2d Cir. 1983); In re Del. & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991) (noting that the Third Circuit has adopted the "sound business purpose" test for section 363(b)).

13.     The retention of corporate officers and other temporary employees is proper under section 363 of the Bankruptcy Code.  Courts recognize the applicability of section 363(b) to the use of estate property to compensate individuals employed outside the ordinary course of business.  See In re First Int'l Services Corp., 25 B.R. 66, 69 (Bankr. D. Conn. 1982).  Indeed, courts have relied upon 363(b) as the basis upon which to employ and compensate financial management services firms similar to PMCM that provide professionals to serve as officers or other management-level personnel employed by the debtor. See, e.g., In re European Distrib. Corp., Case No. 13-10738 (CSS) (Bankr. D. Del. May 9, 2013); In re Spansion Inc., Case No. 09-10690 (KJC) (Bankr. D. Del. Apr. 13, 2009); In re Verasun Energy Corp., Case No. 08-12606 (BLS) (Dec. 8, 2008); In re DBSI, Inc., Case No. 08-12687 (PJW) (Bankr. D. Del. Dec. 17, 2008); In re WorldSpace, Inc., Case No. 08-12412 (KJC) (Bankr. D. Del. Nov. 10, 2008); In re Hines Horticulture, Inc., Case No. 08-11922 (KJC) (Bankr. D. Del. October 2, 2008); In re Dan

4

River Holdings, LLC, Case No. 08-10726 (BLS) (Bankr. D. Del. May 19, 2008); In re Hancock

Fabrics, Inc., Case No. 07-10353 (BLS) (Bankr. D. Del. April 26, 2007); In re Safety-Kleen

Corp., Case No. 00-2303 (PJW) (Bankr. D. Del. Oct. 4, 2001); In re Harnischfeger Indus. Inc.,

Case No. 99-2171 (PJW) (Bankr. D. Del. Oct. 4, 2001).

### A.    The PMCM Engagement

14.    Michael E. Jacoby will serve as the CRO to assist the Debtors with their

reorganization efforts and the chapter 11 cases, as further described below.  PMCM also will

provide the services of certain Additional PMCM Personnel, as necessary, to serve in senior

advisory roles to assist the CRO in the administration and execution of his duties as CRO.

### B.    PMCM's Qualifications

15.    PMCM is a firm specializing in supplying senior executives and other temporary

employees on an interim basis to financially troubled companies, as well as providing turnaround

management assistance, crisis and interim management, liquidity management and restructuring

services for public and private companies, lenders, equity holders and impartial constituents

(such as examiners or trustees).  Working closely with client management, PMCM develops and

implements comprehensive turnaround programs that increase value through improving

operations and asset performance, refocusing business models, restructuring debt, and

effectuating going-concern sale of substantially all assets in order to maximize proceeds for the

benefit of companies and their stakeholders.

16.    The PMCM Personnel are well experienced in restructuring, accounting and

financial services, valuation, capital raising, distressed M&A and insolvency.  The PMCM

Personnel work with existing management to improve and enhance operational and financial

performance, as well as the capital structure.  PMCM's on-going strategy is to focus primarily on

stabilizing the business and maximizing its value for all constituencies.  The PMCM Personnel provide services to meet the financially distressed company's needs, including but not limited to, the following:

       a.      Turnaround Management;

       b.      Crisis Management;

       c.      Interim Management;

       d.      Operational Assessments;

       e.      Financial Forecasting;

       f.      Cash Management;

       g.      Strategic Advisory;

       h.      Bankruptcy Advisory Services;

       i.      Liquidation & Business Wind Down; and

       j.      Litigation Support

17.    Michael E. Jacoby is a Senior Managing Director and Shareholder of PMCM. Michael E. Jacoby has national experience working with financially distressed companies on such issues as managing operations and liquidity, restructure of existing capital structures, raising new debt and equity financing, managing distressed M&A processes, cash flow modeling and borrowing bases analysis, negotiation of credit agreements, and business and collateral valuations.

18.    In addition, PMCM and the CRO are intimately familiar with the Debtors' businesses, financial affairs, and capital structure.

19.    For these reasons, PMCM is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of these cases.  Accordingly,

the Debtors submit that the retention of PMCM and the designation of Michael E. Jacoby as CRO on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

C.    **Scope of Services**

20.    Subject to approval by the Court, the Debtors propose to retain PMCM to provide Michael E. Jacoby as CRO and to provide the Additional PMCM Personnel on the terms and conditions set forth in the Engagement Letter.

21.    The CRO and the Additional PMCM Personnel will provide services to the Debtors including, but not limited to, the following:

a.    Assist the Manager in the oversight of the Debtors' operations;

b.    Oversee the Debtors' Chapter 11 bankruptcy proceedings, together with the Debtors' other professionals;

c.    Assist the Manager in the preparation, monitoring and periodic refinement of cash flow forecasts and scorecards that measure actual to forecasted performance;

d.    Assume primary responsibility, together with the Manager, for communicating and negotiating with the DIP Lender;

e.    Interface with pre-petition senior and subordinated lenders, and other constituents, including any Committee of Unsecured Creditors that may be formed and its counsel and financial advisor, if any;

f.    Assist the Manager with daily cash management activities, including maximizing and forecasting collections and availability, and assisting the Debtors with prioritizing disbursements within the Debtors' availability constraints and subject to its DIP Loan Agreement.  Notwithstanding anything herein, no employee of PMCM shall become signatories to any checking or disbursement account.

g.    Oversee the process and coordinate efforts to consummate a sale of the Debtors' assets under section 363 of the Bankruptcy Code or as part of a plan of reorganization (a "Transaction"), which would include:

       i.       Conduct such due diligence as deemed appropriate on the Debtors and the industry in which they operate, and prepare, in conjunction with the Manager and senior management, a confidential informational memorandum concerning the Debtors;

      ii.      Assist with the development of bid procedures;

    iii.      Develop, update and review with the Debtors on an ongoing basis a list of parties that might be interested in a Transaction; and

    iv.      Consult with and advise the Debtors concerning Transaction opportunities, manage the process involved with any Transaction, including the negotiating and closing of a Transaction, and advise on strategic alternative that may be options for the Debtors.

    h.      Other duties as mutually agreed.

22.      These services are necessary to enable the Debtors to maximize the value of their estates and successfully complete their restructuring.

**D.**      **Compensation and Fee Applications**

23.      Subject to Court approval, and as more fully set forth in the Engagement Letter, compensation will be payable to PMCM at its normal and customary rates, plus reimbursement of actual, necessary expenses and other charges incurred.  PMCM has advised the Debtors that its current hourly rates applicable to the PMCM Personnel for their services are as follows:

| Professional | Hourly Rate |
|---|---|
| Senior Managing Directors | $495 - $695 |
| Senior Advisors | $400 - $650 |
| Managing Directors | $395 - $525 |
| Senior Directors | $350 - $450 |
| Directors | $320 - $375 |
| Vice Presidents & Sr. Associates | $250 - $350 |
| Analysts/Associates | $150 - $275 |
| Admin. Staff | $75 - $150 |

24.      Additionally, Michael E. Jacoby's hourly rate as CRO is $625.00.

25.     The hourly rates and compensation arrangement reflected in the Engagement Letter are PMCM's standard hourly rates for work of this nature.  These rates are designed at a level to fairly compensate PMCM for the work of its professionals and to cover fixed and routine overhead expenses.  These rates are subject to periodic adjustments to reflect economic and other conditions.  Other PMCM Personnel may from time to time serve the Debtors in connection with the matters herein described.

26.     PMCM will be reimbursed for reasonable out-of-pocket expenses, such as travel, telephone and facsimile, courier, and copy expenses.  PMCM will be reimbursed for legal fees incurred in responding to discovery or testifying as a witness in any matter relating to its services, excluding testimony provided during the term of the engagement.

27.     Prior to the Petition Date, PMCM received $250,000 (the "Retainer") from the Debtors in connection with PMCM's consultations with the Debtors with respect to their financial difficulties, businesses, and restructuring strategy.  The Retainer was paid from the Debtors' cash.  None of the Retainer has been applied to amounts due for services rendered and expenses incurred prior to the Petition Date. As set forth in the Jacoby Declaration, the Debtors do not owe PMCM any amount for services performed or expenses incurred prior to the commencement of these Chapter 11 cases, and, thus, PMCM is not a prepetition creditor of the Debtors.

28.     In addition to the hourly fees detailed above, PMCM shall be entitled to a success fee of $100,000 (the "Success Fee") upon (i) the closing of a sale pursuant to 11 U.S.C. § 363 or (ii) the confirmation of a Plan of Reorganization, provided that in either instance the purchaser or source of funding is an entity that is **not** the senior lender, the subordinated lender, the DIP lender, or any of their respective affiliates.  The Success Fee shall be subject to Court approval at

9

the conclusion of the Debtors' cases on a reasonableness standard and shall not be pre-approved under 11 U.S.C. §§ 328(a).

29.     Because PMCM is not being employed as a professional under 11 U.S.C. §§ 327, PMCM will not be required to submit fee applications pursuant to 11 U.S.C. §§ 330 and 331.  In lieu of filing monthly or interim fee applications, PMCM will file with the Court, and provide notice to the Debtors, the Office of the United States Trustee, and all official committees (collectively, the "Notice Parties"), reports of compensation earned and expenses incurred on at least a quarterly basis.  Such compensation and expenses shall be subject to review in the event that an objection is filed.  For the avoidance of doubt, PMCM will not be required to submit time entries in tenth of an hour increments as required by Del. Bankr. L.R. 2016-2(d)(iv).

30.     In addition, PMCM will file with the Court and provide the Notice Parties a report on staffing (the "Staffing Report") by the 20th of each month for the previous month, which report would include the names and functions filled by all PMCM Personnel involved in these matters.  The Staffing Report (and PMCM's staffing for this matter) would be subject to review by the Court in the event so requested by any of the Notice Parties.

31.     The Debtors submit that the compensation arrangements reflected in the Engagement Letter are reasonable and consistent with, and typical of, arrangements entered into by PMCM and other restructuring and consulting firms with respect to rendering similar services for clients such as the Debtors.

    E.     **Disinterestedness and Disclosure of Connections**

32.     Except as disclosed in the Jacoby Declaration, PMCM does not represent any entity having an adverse interest with these cases.  To check and clear potential conflicts of

interest in these cases, PMCM researched its client database to determine whether it had any relationship with the following entities (collectively, the "Interested Parties"):

      a.      The Debtors and non-debtor affiliates;

      b.      The Debtors' prepetition lenders;

      c.      The Debtors' current and former officers and managers;

      d.      Non-debtor affiliates' current and former officers, members, managers, and equity interest holders;

      e.      The Debtors' consolidated list of unsecured creditors;

      f.      The Debtors' largest known shareholders/members;

      g.      Judges of the Delaware Bankruptcy Court; and

      h.      Attorneys of the Office of the United States Trustee.

33.     A full list of the Interested Parties searched is attached to the Jacoby Declaration as **Schedule "A"** and incorporated by reference herein.  To the extent that PMCM's research of its relationships with the Interested Parties indicates that PMCM has represented, or currently represents, any of these entities in matters unrelated to the Debtors, the identities of these entities are disclosed in paragraph nine (9) of the Jacoby Declaration.

34.     Although the Debtors submit that the retention of PMCM is not governed by 11 U.S.C. § 327, the Debtors attach the Jacoby Declaration, which discloses, among other things, any relationships that PMCM, Michael E. Jacoby, or any other individual member of the PMCM Personnel has with any of the Interested Parties in which PMCM has represented, or currently represents in matters unrelated to the Debtors. As set forth in the Jacoby Declaration, the Debtors believe that (a) PMCM, Michael E. Jacoby, and all other individual members of the PMCM Personnel, have no connection with any of the Interested Parties; (b) PMCM, Michael E. Jacoby, and all other individual members of the PMCM Personnel, are not and have not at any time been

a director or member of the board of managers of the Debtors; (c) PMCM, Michael E. Jacoby, and all other individual members of the PMCM Personnel, do not hold or represent any interest adverse to the Debtors' estates; and (d) PMCM, Michael E. Jacoby, and all other individual members of the PMCM Personnel are each a "disinterested person" as that phrase is defined in section 101(14) of the Bankruptcy Code.

35.    Accordingly, the Debtors submit that the retention of PMCM and the designation of Michael E. Jacoby as CRO is necessary and in the best interests of the Debtors, their estates and creditors.

F.    **Indemnification**

36.    As a material part of the consideration for which the PMCM Personnel have agreed to provide the services described herein, pursuant to the Engagement Letter (including the Consent, Release and Indemnification Agreement attached to and made part of the Engagement Letter (the "Indemnification Agreement"), the Debtors have agreed to (a) indemnify the PMCM Personnel acting as officers to the same extent as the most favorable indemnification it extends to officers and directors and to cover such Indemnified Parties under the Debtors' D&O policy, and (b) indemnify and hold harmless, the Indemnified Parties (as defined therein) under certain circumstances.

37.    The Debtors believe the indemnity provisions are a reasonable term and condition of PMCM's engagement and were, along with all terms of the Engagement Letter, negotiated by the Debtors and PMCM at arm's length and in good faith.  PMCM and the Debtors believe that the indemnity provisions are comparable to those indemnification provisions generally obtained by crisis management firms of similar stature to PMCM for comparable engagements, both in and out of court.  The Debtors respectfully submit that the indemnification provisions contained

in the Indemnification Agreement, viewed in conjunction with the other terms of PMCM's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and creditors in light of the fact that the Debtors require PMCM's services to successfully reorganize.

## WAIVER OF BANKRUPTCY RULE 6004(h)

38.     The Debtors further seeks a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  The Debtors submit that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

## NOTICE

39.     This Motion has been provided to (i) the Office of the United States Trustee; (ii) counsel for the Debtors' prepetition and postpetition lenders (if known); (iii) the Debtors' prepetition and postpetition lenders; (iv) PMCM, LLC; (v) any party requesting notice pursuant to Bankruptcy Rule 2002; and (vi) all creditors.  The Debtors submit that no other or further notice need be provided.

**[remainder of page left intentionally blank]**

<u>**CONCLUSION**</u>

WHEREFORE, the Debtors respectfully request the entry of an order, pursuant to Sections 105(a) and 363(b) authorizing the Debtors to (I) retain PMCM to provide the PMCM Personnel; (II) designate Michael E. Jacoby as CRO for the Debtors, effective as of the Petition Date; and (III) for such other and further relief as is just.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

By: */s/  L. John Bird*
      L. John Bird
      Delaware Bar No. 5310
      919 North Market Street, Suite 300
      Wilmington, DE  19801-2323
      Phone (302) 654-7444/Fax (302) 656-8920
      lbird@foxrothschild.com
         -and-
      Michael G. Menkowitz
      Paul J. Labov
      Jason C. Manfrey
      2000 Market Street, 20th  Floor
      Philadelphia, PA  19103-3222
      Phone (215) 299-2000/Fax (215) 299-2150
      mmenkowitz@foxrothschild.com
      plabov@foxrothschild.com
      jmanfrey@foxrothschild.com

Dated: April 20, 2016      Proposed counsel for AF-Southeast, LLC, *et al.*, the Debtors and Debtors-in-Possession

14