## EXHIBIT 1

**BIDDING PROCEDURES ORDER**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| AF-SOUTHEAST, LLC, *et al.* [1] | : | Case No. 16-11008 (KG) |
| | : | (Jointly Administered) |
| | : | **Related D.I. ____** |
| Debtors. | : | **Hearing Date: TBD** |
| | : | **Objection Date: TBD** |

## ORDER UNDER 11 U.S.C. §§ 105 AND 363 AND RULES 2002, 6004 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) APPROVING BIDDING PROCEDURES; (II) SCHEDULING BID DEADLINE, AUCTION DATE AND SALE HEARING AND APPROVING NOTICE THEREOF; AND (III) APPROVING PROCEDURES RELATED TO ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND APPROVING NOTICE THEREOF

Upon the motion (the "Motion"), dated _____, 2016 of AF-Southeast, LLC, *et al.* (the "Debtors"), the Debtors and debtors-in-possession in the above captioned cases ("Cases"), under sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rule 6004 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for the entry of: (i) this initial order (the "Bidding Procedures Order"), (a) approving the bidding procedures (the "Bidding Procedures"), substantially similar to the procedures attached to this Bidding Procedures Order as Exhibit A, (b) approving the form of notice of the Bidding Procedures, Auction,[2] Sale Hearing and Sale, (c) approval of procedures for the assumption by the Debtors and assignment to the Prevailing Bidder of Assigned Contracts, including notice of

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers, are: (i) AF-Southeast, LLC (8002); (ii) Allied Fiber – Florida, LLC (8111); and (iii) Allied Fiber – Georgia, LLC (2935).

[2] Any terms not defined herein shall have the meanings ascribed to them in the Purchase Agreement, Bidding Procedures and/or the Motion.

proposed cure amounts; (d) and granting other related relief; and (ii) the entry of a second order (the "Sale Order"), (a) authorizing the Debtors to enter into the proposed Asset Purchase Agreement (the "Purchase Agreement") and approving the sale to the bidder submitting the highest or otherwise best offer at the Auction (the "Prevailing Bidder") for the Purchased Assets set forth in the Purchase Agreement (the "Sale"), (b) the assumption, sale and assignment to the Prevailing Bidder of the Assigned Contracts and (c)  granting other relief related thereto; the Court having reviewed the Motion and scheduled a hearing (the "Procedures Hearing") on the Motion, and the Court having found that (i) the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); and (iv) notice of the Motion and Hearing was sufficient under the circumstances; and after due deliberation the Court having determined that the relief requested in the Motion is in the best interests of the Debtors' estates and their creditors; and good and sufficient cause having been shown;

AND FURTHER FOUND AND DETERMINED THAT:

A.     This Court has jurisdiction over the Cases and the Motion as a core proceeding and over the parties and property affected hereby under 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

B.     Under the circumstances, the notice given by the Debtors of the Motion and the Procedures Hearing constitutes appropriate notice and complies with section 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

C.      The Bidding Procedures in the form attached hereto as <u>Exhibit A</u> are fair, reasonable, and appropriate and are designed to maximize the recovery from the Sale of the Purchased Assets.

D.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

E.      The Debtors, in conjunction with their professionals and advisors, and in consultation with the DIP Lender, have conducted a robust marketing process since the filing of the Cases with respect to the Purchased Assets.

F.      The form and scope of the proposed Purchase Agreement, attached hereto as <u>Exhibit B</u>, is reasonable under the circumstances and the proposed Purchase Agreement is reasonably calculated to provide a uniform agreement with which Potential Bidders can submit Qualified Bids and will economize the Bidding Procedures process for the Debtors' estates.

G.      The form and scope of the Notice of Bid Deadline, Auction, and Sale Hearing (as defined below) is reasonably calculated to provide all interested parties with timely and appropriate notice of the Sale, Sale Hearing, Auction, and Bidding Procedures and complies with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable case law.

H.      The form and scope of the Notice of Assumption and Assignment (as defined below) is reasonably calculated to provide each non-Debtor counterparty to the Contracts with timely and appropriate notice of the potential assumption and assignment of its Contract and complies with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, Local Rules and applicable case law.

I.       To the extent any of these findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

IT IS HEREBY ORDERED THAT:

1.       The Motion (as it pertains to approval of the matters set forth herein) is granted. Any objections to this Bidding Procedures Order that have not been previously resolved or withdrawn are overruled on the merits.  This Bidding Procedures Order shall be valid, binding and enforceable on all parties in interest and fully effective immediately upon entry.

2.       The Debtors shall cause to be served, within five (5) business days after issuance of this Bidding Procedures Order, by first-class mail, postage prepaid, or by electronic mail (i) notice of the Bid Deadline, Auction and Sale Hearing substantially in the form annexed hereto as Exhibit C (the "Notice of Bid Deadline, Auction, and Sale Hearing"), (ii) this Bidding Procedures Order, including the Bidding Procedures attached hereto as Exhibit A, and (iii) the Motion (the Notice of Bid Deadline, Auction, and Sale Hearing, this Bidding Procedures Order and the Bidding Procedures, the Motion, collectively, the "Sale Package"), upon: (a) all potential buyers previously identified or solicited by the Debtors and/or PMCM and any additional parties who have previously expressed an interest in potentially acquiring the Purchased Assets, (b) all other potentially interested parties identified by the Debtors or their professionals; (c) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), (d) each non-Debtor counter-party to the Debtors' executory contracts and unexpired leases (collectively, the "Contracts"), (e) all parties in interest who have requested notice in the Cases under Bankruptcy Rule 2002, (f) all parties who are known to possess or assert a lien, claim, encumbrance or interest in or upon any of the Purchased Assets, including but not limited to the DIP Lender and

counsel for the DIP Lender, and the Junior Lien Holders (service upon which shall be made to the agent for the Junior Lien Holders as identified in the Intercreditor Agreement), (g) counsel for the Official Committee of Unsecured Creditors (the "Creditors' Committee"), if one is appointed, (h) the Internal Revenue Service, (i) the Attorney General for the State of Florida, Attorney General for the State of Georgia and the Attorney General for the State of Delaware, (j) the United States Attorney's office, (k) all applicable federal, state and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested in the Motion and (l) the Securities and Exchange Commission.  Due to the size and complexity of the Cases, the Debtors' known creditors (other than if included in (a) – (l)) will receive only the Notice of Bid Deadline, Auction and Sale Hearing.  Such notice shall be sufficient and appropriate notice of the Sale with respect to known interested parties.

3.     In addition, the Debtors shall publish the Notice of Bid Deadline, Auction, and Sale Hearing in *The Wall Street Journal* (National Edition) within five (5) business days after issuance of this Bidding Procedures Order.

## BIDDING PROCEDURES AND AUCTION

4.     The Bidding Procedures, annexed hereto as Exhibit A, are incorporated herein by reference and are approved and shall govern the qualification of bidders, the submission, content and qualification of all Qualified Bids and bidding procedures relating to the Auction of the Purchased Assets.  The Bidding Procedures are necessary and reasonable under the circumstances of these Cases, are intended and are likely to preserve and enhance the value of the Debtors' estates and are approved in their entirety.

5.      The proposed Purchase Agreement, annexed hereto as <u>Exhibit B</u>, is incorporated herein by reference and is approved as the form of agreement to be used by bidders in conjunction with the Bidding Procedures.

6.      Subject to the terms and conditions set forth in the Bidding Procedures, the Debtors are hereby authorized and directed to (a) solicit any person to become a Potential Bidder, (b) permit Potential Bidders to conduct a due diligence investigation in connection with the Sale, (c) in consultation with the DIP Lender and the Creditors' Committee (if one is appointed in the Cases), determine whether a bid timely submitted by a Potential Bidder is a Qualified Bid, (d) if one or more Qualified Bids is submitted, conduct an Auction, (e) at the conclusion of such Auction, in consultation with the DIP Lender and the Creditors' Committee (if one is appointed in the Cases), designate the highest or otherwise best offer as the Prevailing Bidder and the next highest or otherwise best offer and the Back-Up Bidder, and (f) in consultation with the DIP Lender and the Creditors' Committee (if one is appointed in the Cases), seek Bankruptcy Court approval at the Sale Hearing of the Prevailing Bid submitted by the Prevailing Bidder and the Back-Up Bid submitted by the Back-Up Bidder.

**SALE HEARING AND OBJECTIONS TO THE SALE**

7.      The Court shall hold the Sale Hearing on **July _____, 2016 at _____.M.** (Eastern Time), or such other date and time as may be convenient to the Court, or as may be announced at the Sale Hearing without further notice.

8.      To be considered by the Court, any objections to the Sale of the Purchased Assets to the Prevailing Bidder under the Purchase Agreement shall (a) be in writing, (b) conform to the Bankruptcy Rules and the Local Rules, (c) set forth the name of the objecting party, the nature and amount of any claims or interest held or asserted against the Debtors' estates or their

properties, the basis for the objection and the specific grounds therefor and (d) be filed with the Court and served on the following (collectively, the "Objection Notice Parties"): (i) the U.S. Trustee, J. Caleb Boggs Federal Building, 844 King Street, Room 2207, Wilmington, DE 19801, Attention: Linda J. Casey, Esq.; (ii) proposed counsel for the Debtors, Fox Rothschild LLP, 2000 Market Street, 20th Floor, Philadelphia, Pennsylvania 19103, Attention: Michael Menkowitz, Esq., Joshua T. Klein, Esq., and Jason C. Manfrey, Esq., and and L. John Bird, Esq., 919 Market Street, Suite 300, Wilmington, DE 19801; (iii) co-counsel for the DIP Lender, Neligan Foley LLP, 325 N. St. Paul, Suite 3600, Dallas, TX 75201, Attention: Patrick J. Neligan, Jr., Esq. and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attention: Mark D. Collins, Esq. and Jason M. Madron, Esq., (iv) counsel for the Official Committee of Unsecured Creditors, if one is appointed, and (v) counsel for the Prevailing Bidder, so as to be received no later than _____ __.M. **(Eastern time) on** _____, **2016** (the "Sale Objection Deadline").

9.      Any entity that fails to file and serve its objection before the expiration of the Sale Objection Deadline and otherwise in accordance with this Bidding Procedures Order shall be prohibited from asserting at the Sale Hearing or at any time thereafter any objection to the Motion or the consummation and performance of the Sale as contemplated by the terms of the Purchase Agreement submitted by the Prevailing Bidder, including the transfer of the Purchased Assets free and clear of all Liabilities (other than Liabilities assumed by the Prevailing Bidder).

10.     If the Debtors receive more than one Qualified Bid from Qualified Bidders the Debtors shall conduct an Auction commencing at **10:00 A.M. (Eastern Time) on July 12, 2016** at the offices of Fox Rothschild LLP, 2000 Market Street, 20th Floor, Philadelphia, Pennsylvania

19103, or such other time or place as the Debtors, at least two (2) business days before the Auction, notifies all Qualified Bidders who have submitted Qualified Bids. The Debtors shall conduct an open Auction in accordance with the Bidding Procedures on the record, recorded by a court reporter. Each Qualified Bidder participating at the Auction shall confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

## ASSUMPTION AND ASSIGNMENT OF CONTRACTS

11.    The Debtors shall send notice within five (5) business days of the date of the entry of this Bidding Procedures Order substantially in the form annexed hereto as <u>Exhibit D</u> (the "<u>Notice of Assumption and Assignment</u>") to all non-Debtor counter-parties to the Contracts. The Notice of Assumption and Assignment shall set forth (i) that such Contract may be assumed by the Debtor and assigned to the Prevailing Bidder under the Bidding Procedures and (ii) the Cure Amount (as defined in the Notice of Assumption and Assignment) associated with the assumption and assignment of such Contract. Upon receipt of any Qualified Bid submitted by a Qualified Bidder, the Debtor shall promptly determine whether a Notice of Assumption and Assignment needs to be given to any additional non-Debtor parties to Contracts, which are listed on any schedule to such Prevailing Bidder's version of the Purchase Agreement to be assumed and assigned to such Qualified Bidder (the "<u>Assigned Contracts</u>"), and shall mail, or otherwise serve by overnight courier service or other prompt method of service, within three (3) business days of receipt of such Qualified Bid, such additional Notices of Assumption and Assignment as may be required. A counterparty to a Contract which later receives a notice that a Qualified Bidder has designated that Contract for assumption and assignment may object as set forth in paragraphs 12 and 15, below.

12.     All objections to the assumption, sale and assignment of any Assigned Contract or to any Cure Amount (each, an "Assumption and/or Cure Objection") must be filed with the Court and served upon the Objection Notice Parties so as to be actually received no later than the Sale Objection Deadline. All Assumption and/or Cure Objections must state with specificity the nature of such objection and may be heard by the Court at the Sale Hearing or such other date and time as the Debtors may schedule with the Court.

13.     If an objection is timely filed and served in accordance with sub-paragraph b. above challenges a Cure Amount, such objection must set forth the amount of cure being claimed by the objecting party (the "Claimed Cure Amount") with appropriate documentation in support thereof. Upon receipt of a timely filed and served objection to a Cure Amount, the Prevailing Bidder shall include in the Post-Closing Cure Reserve Amount an amount equal to the Claimed Cure Amount, which amount may be released and paid to such counterparty by the Debtors after the Cure Amount is fixed by the Court or agreed upon by the Debtors and the objecting party as the Claimed Cure Amount. So long as the Claimed Cure Amount shall have been set aside in the Escrow Account, the Debtors shall be authorized, without further delay, to assume, sell and assign the Assigned Contract that is the subject of such Claimed Cure Amount objection to the Prevailing Bidder.

14.     If no objection to the Cure Amount or the proposed assumption, sale and assignment in respect of an Assigned Contract is timely filed and served: (i) the Debtors may assume, sell and assign to the Prevailing Bidder such Assigned Contracts (ii) the Cure Amount set forth in the Notice of Assumption and Assignment shall be binding upon the respective non-Debtor party to the Assigned Contract for all purposes in these Cases, and (iii) the respective non-Debtor party shall be forever barred from objecting to the assumption, sale and assignment

of the relevant Assigned Contract and/or Cure Amount, and from asserting against the Debtors or the Prevailing Bidder any right of setoff, condition to assignment and/or any additional cure or other amount with respect to such Assigned Contract.

15.     Due to the timing of the Sale process set forth in the Bidding Procedures and this Bidding Procedures Order, non-Debtor parties to Assigned Contracts may raise objections to adequate assurance of future performance under the Assigned Contracts at the Sale Hearing.

16.     The effective date of any assumption, sale and assignment of any Assigned Contract shall be the Closing (as defined in the Purchase Agreement).  Accordingly, any Cure Amounts to be paid under any Assigned Contract shall be paid in accordance with the Purchase Agreement of the Prevailing Bidder upon or as soon as reasonably practicable after the Closing Date or as soon thereafter as the Cure Amount is fixed by the Court or agreed upon by the Debtors, the Prevailing Bidder and the objecting party.

## ADDITIONAL PROVISIONS

17.     The proposed Purchase Agreement and any exhibits and schedules thereto (collectively, the "Transaction Documents") may be amended, modified or supplemented, or the provisions thereof waived, in accordance with the terms of the proposed Purchase Agreement and/or as required to implement the Bidding Procedures and Sale process without further order of this Court or notice thereof to any party, other than Potential Bidders or Qualified Bidders.

18.     The failure to include or reference in this Bidding Procedures Order any particular provisions of the Bidding Procedures shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Bidding Procedures be authorized and approved in their entirety.

19.     This Court shall retain exclusive jurisdiction to interpret, construe, enforce and implement the terms of this Bidding Procedures Order and grant any remedy, at law or equity, as the circumstances require.

20.     Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Bidding Procedures Order shall not be stayed for fourteen (14) days after the entry hereof and shall be effective and enforceable immediately upon signature hereof.

21.     The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Bidding Procedures Order.

Dated: _____, 2016
        Wilmington, Delaware


                                        _____
                                        The Honorable Kevin Gross
                                        United States Bankruptcy Judge

## EXHIBIT A

## BIDDING PROCEDURES

BIDDING PROCEDURES[1]

These bidding procedures (the "Bidding Procedures") set forth the terms by which AF-Southeast, LLC, *et al.*, (collectively, the "Debtors" or the "Seller"), Debtors and debtors in possession may effectuate a sale (the "Sale") of substantially all of their assets (the "Purchased Assets") subject to the terms and conditions and in accordance with the process and procedures set forth herein. These Bidding Procedures were approved by an order (the "Bidding Procedures Order") entered on _____, 2016, by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in the following proceeding: *In re AF-Southeast, LLC et al.* Case No. 16-11008 (KG) (Jointly Administered).

**I.    Important Dates, Contact Information, and Terms**

The following dates and deadlines apply to the proposed Sale.

| | |
|---|---|
| **General Bid Deadline:** | _____, 2016 at 5 p.m. (prevailing ET) |
| **Auction:** | July 12, 2016 at 10 a.m. (prevailing ET) |
| **Sale Hearing:** | July 14, 2016 at ____ (prevailing ET) |
| **Sale Closing:** | on or before July 18, 2016 |

The key dates in the sale process may be extended by the Debtors in consultation with the Consultation Parties (defined below) or by the Bankruptcy Court for cause.

Parties interested in the Assets may contact the Debtors through PMCM LLC, their court-appointed Chief Restructuring Officer (the "CRO") by contacting: Michael E. Jacoby, Managing Director, PMCM, LLC, 110 Commons Court, Chadds Ford, PA 19317 Telephone: (610) 358-4700, Email: mjacoby@phoenixmanagement.com

"Consultation Parties" means, collectively, the Debtors and their professionals and advisors, the DIP Lender and its professionals and advisors and the Official Committee of Unsecured Creditors, if one is appointed in the Cases (the "Creditors' Committee"), and its professionals and advisors.

**II.    Due Diligence and Participation**

To participate in the sale process as a potential purchaser, conduct due diligence upon the Assets and be entitled to submit a bid for consideration hereunder, a party (each an "Interested Party") must deliver the following to the Debtors:

(A)    an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors;

---

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the Bidding Procedures Order, Bidding Procedures Motion or the Purchase Agreement, attached hereto as **Exhibit 1**. The Debtors are: AF-Southeast, LLC; Allied Fiber – Florida, LLC; and Allied Fiber – Georgia, LLC.

(B)    a statement and other factual support demonstrating to the Debtors' reasonable satisfaction, after consultation with the Consultation Parties, that the Interested Party has a *bona fide* interest in purchasing the Assets or some subset of the Assets; and

(C)    sufficient information, as determined by the Debtors in consultation with the Consultation Parties, to confirm that the Interested Party has the financial wherewithal and any required corporate, legal or other authorization necessary to close the Sale, including, but not limited to, a form of financial disclosure acceptable to the Debtors in their discretion.

Upon satisfactory receipt of the items above, as determined by the Debtors in consultation with the Consultation Parties, then such Interested Party will be deemed a "Potential Bidder," and the Debtors will deliver to such Potential Bidder: (A) an information package containing information and financial data with respect to the Assets (the "Information Package"); and (B) access information for the Debtors' confidential electronic data room concerning the Assets (the "Data Room"). The identity of each Potential Bidder may be disclosed to any other Potential Bidders. The Debtors will deliver a list of all current Potential Bidders to the Consultation Parties within one (1) business day after each Potential Bidder is added.[2]

Until the business day immediately preceding the Bid Deadline, the Debtors will provide any Potential Bidder such due diligence access or additional information as the Debtors, in consultation with the Consultation Parties, determine to be reasonably requested and appropriate under the circumstances. In the event that any such due diligence material is in written form and has not previously been provided to any other Potential Bidder, the Debtors will provide such materials to all Potential Bidders to the extent practicable, as well as to the Consultation Parties. The Debtors retain the right to establish, maintain and make available a "virtual data room" containing due diligence material in written form, access to which shall be made available to all Potential Bidders.

Unless otherwise determined by the Debtors, in consultation with the Consultation Parties, the availability of additional due diligence to a Potential Bidder will cease if (A) the Potential Bidder does not become a Qualified Bidder or (B) the bidding process is terminated in accordance with its terms. Except as provided above with respect to the Information Package and access to the Data Room, neither the Debtors nor their representatives will be obligated to furnish any information of any kind whatsoever relating to the Purchased Assets to any party.[3]

A party may participate in the bidding process by submitting a bid to purchase less than all of the Purchased Assets. In addition, parties may participate in the bidding process by submitted a joint bid to purchase all, or less than all, of the Purchased Assets.

## III.    General Bid Deadline

A Potential Bidder that desires to make a bid shall deliver written and electronic copies of its bid in both PDF and Word format to the Notice Parties listed below so as to be received no later than 5:00 p.m. (prevailing Eastern Time) on _____, 2016 (the "General Bid Deadline").

---

[2] Notwithstanding the foregoing, nothing herein is intended to, nor shall it, limit or alter the Debtors' obligations to provide information to the DIP Lender or Senior Pre-Petition Lender under the terms of the DIP Loan Documents, Senior Pre-Petition Loan Documents, or applicable orders of the Bankruptcy Court.
[3] *See* note 2, *supra*.

The "Notice Parties" means each of the following: (A) the Debtors c/o Michael E. Jacoby, Managing Director, PMCM, LLC, 110 Commons Court, Chadds Ford, PA 19317 Telephone: (610) 358-4700, Email: mjacoby@phoenixmanagement.com; (B) proposed counsel to the Debtors, Fox Rothschild LLP, 2000 Market Street, 20th Floor, Philadelphia, PA 19103, Attention: Michael G. Menkowitz mmenkowitz@foxrothschild.com and Joshua T. Klein jklein@foxrothschild.com; (C) co-counsel to the DIP Lender, Neligan Foley LLP, 325 N. St. Paul, Suite 3600, Dallas, TX 75201, Attention: Patrick J. Neligan, Jr., pneligan@neliganlaw.com and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attention: Mark D. Collins Collins@rlf.com and Jason M. Madron Madron@rlf.com; and (D) counsel to the Creditors' Committee, if one is appointed.

## IV.    Qualified Bids

Assuming that there is an Auction, a Potential Bidder will not be entitled to participate in any Auction or otherwise purchase the Assets, unless it shall have submitted a Qualified Bid by the General Bid Deadline in accordance with these Bidding Procedures that includes **all** of the following items (the "Bid Package"):

(A)    an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors;

(B)    The true identity of the party submitting the bid and details regarding any other parties participating in the bid;

(C)    A written acknowledgment by the Qualified Bidder and each participant in such bid that it/they agrees to all of the terms set forth in these Bidding Procedures;

(D)    Written evidence that the Qualified Bidder has obtained authorization and approval from its board of directors (or comparable governing body) with respect to the submission of its bid and acceptance of the terms set forth in these Bidding Procedures, or representation that no such authorization or approval is required; provided, however, that neither the DIP Lender nor the Senior Pre-Petition Lender, or their designated affiliate(s) shall be required to provide such information;

(E)    Audited (if in existence) or unaudited financial statements and/or other written evidence of a financing commitment or other evidence, satisfactory to the Debtors, in consultation with the Consultation Parties, of the financial ability to close under its asset purchase agreement within the deadline described above; provided, however, that neither the DIP Lender nor the Senior Pre-Petition Lender, or their designated affiliate(s) shall be required to provide such information;

(F)    A signed Purchase Agreement, in form and substance substantially similar to the form Asset Purchase Agreement attached hereto as Exhibit 1 and incorporated herein by reference, which shall contain a list of the unexpired leases and executory contracts to be assumed and assigned to the bidder;

(G)    the Potential Bidder will pay any and all cure costs associated with the assumption of any unexpired leases or executory contracts;

(H)    the bid is formal, binding and unconditional (except for those conditions expressly set forth in the applicable APA, including expressly stating any conditions relating to the

assumption and assignment of contracts and leases) and is not subject to any due diligence or financing contingency and is irrevocable until the earlier of 48 hours after the Sale of the Purchased Assets has closed or 30 days after the conclusion of the Sale Hearing;

(I)     does not entitle the Potential Bidder to any breakup fee, termination fee, expense reimbursement or similar type of payment or reimbursement and includes a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the Assets;

(J)     a Good Faith Deposit (defined below); and

(K)     the Qualified Bidder is received by the Bid Deadline.

With the exception of the DIP Lender and Senior Pre-Petition Lender, or their designated affiliate(s), a Potential Bidder must deposit with either the Debtors or an escrow agent selected by the Debtors (the "Deposit Agent") a cash deposit equal to the greater of (i) $1,000,000 or (ii) three and one half (3.5%) percent of the cash purchase price set forth in the Purchase Agreement submitted by the Potential Bidder (any such deposit, a "Good Faith Deposit"). The Good Faith Deposit must be made by wire transfer and will be held by the Deposit Agent.

If a bid is received and, in the Debtors' judgment, after consultation with the Consultation Parties, it is not clear whether the bid is a Qualified Bid, the Debtors and the Consultation Parties may consult with the Potential Bidder and seek additional information in an effort to establish whether or not a bid is a Qualified Bid.

The Debtors shall provide to the Consultation Parties copies of each Bid Package received. A Bid Package received from a Potential Bidder that is determined by the Debtors, after consultation with the Consultation Parties, to meet the above requirements (or any modification to the above requirements made after consultation with the Consultation Parties) will be considered a "Qualified Bid," and each Potential Bidder that submits a Qualified Bid will be considered a "Qualified Bidder." For purposes of the Auction, the DIP Lender and Senior Pre-Petition Lender, or their designated affiliate(s), will each be deemed a Qualified Bidder without the requirement of any deposit but subject in all respects to the Credit Bidding section set forth below.

A Qualified Bid and bids at the Auction may be valued by the Debtors, after consultation with the Consultation Parties, based upon factors such as: (A) the purported amount of the Qualified Bid, including the bid's impact on all constituents of the Debtors, any benefit to the Debtors' bankruptcy estates from any assumption of liabilities, the waiver of liabilities through a Credit Bid, and an analysis of other non-cash consideration; (B) the value to be provided to the Debtors under the Qualified Bid, including the net economic effect upon the Debtors' estates; (C) contingencies with respect to the Sale and the ability to close the proposed Sale without delay, and any incremental costs to the Debtors in closing delays; (D) the ability to obtain any and all necessary governmental approvals for the proposed transaction; and (E) any other factors the Debtors, after consultation with the Consultation Parties, may deem relevant.

Except with respect to the DIP Lender and Senior Pre-Petition Lender, or their designated affiliate(s), the Debtors, in consultation with the Consultation Parties, reserve the right to impose additional terms and conditions with respect to all Qualified Bidders.

**V.     Credit Bid**

For purposes of these Bidding Procedures and the Auction, the DIP Lender and Senior Pre-Petition Lender, or their designated affiliate(s), shall each be deemed a Qualified Bidder, and shall have the right to submit a credit bid up to the full amount of its allowed secured claim for the Purchased Assets at the Auction ("Credit Bid"). As a condition to Credit Bidding any portion of its secured claim, the DIP Lender and Senior Pre-Petition Lender, or their designated affiliate(s), shall include an offer to fund, in cash, at Closing, the Carve-out (as that term is defined in the Interim DIP Financing Order, or a later final order approving the DIP Financing) and any reasonable, allowed estate professional fees and expenses incurred and unpaid as of Closing. Notwithstanding the foregoing, nothing contained herein shall be deemed consent by the Creditors' Committee, if any, of the DIP Lender's, Senior Pre-Petition Lender's, or their designated affiliate(s)' ability to Credit Bid its secured claim and all such rights to object to Credit Bidding are hereby preserved. In the event that (a) the Creditors' Committee or another party in interest brings a claim or proceeding against the DIP Lender contesting the nature, extent, validity, or priority of or seeking to avoid or subordinate the DIP Lender's claim or any liens securing same or (b) the Creditors' Committee or any party in interest contests or the Bankruptcy Court limits the DIP Lender's rights to Credit Bid the amount of its respective debt, the DIP Lender shall have the option to postpone the Auction upon prior written notice to the Debtors and the Consultation Parties. In the event there is an objection to the rights of the DIP Lender to credit bid up to the full amount of its secured claim, such dispute shall be subject to the determination of the Bankruptcy Court.

## VI.    Baseline Bid

The Debtors, after consultation with the Consultation Parties, will select what they determine to be the highest or best Qualified Bid (or collection of Qualified Bids) for the Purchased Assets (the "Baseline Bid") to serve as the starting point at the Auction. As soon as practicable, the Debtors will identify the Baseline Bid and provide to all Qualified Bidders copies of all Qualified Bids (with such distribution permissible by electronic means, including posting to the Data Room).

## VII.   Auction

If more than one Qualified Bid is received by the General Bid Deadline, then the Debtors will conduct an auction (the "Auction") to take place at 10:00 a.m. (prevailing ET) on July 12, 2016, at the offices of Fox Rothschild LLP, 2000 Market Street, 20th Floor, Philadelphia, PA 19103, or such other time as the Debtors, after consultation with the Consultation Parties, may notify Qualified Bidders who have submitted Qualified Bids.

Only Qualified Bidders and their designated agents will be eligible to participate at the Auction, subject to such modifications and limitations as the Debtors may impose in good faith, after consultation with the Consultation Parties. Professionals and/or other representatives of the Consultation Parties and a representative from the Office of the United States Trustee for the District of Delaware will be able to attend and observe the Auction.

At the Auction, participants will be permitted to increase their bids. Bidding on the Assets will start at the purchase price and terms proposed in the Baseline Bid, and will proceed thereafter in increments of $_____ (the "Minimum Overbid").

The Debtors may adopt rules, after consultation with the Consultation Parties, for the Auction at any time that the Debtors determine to be appropriate to promote the goals of the bidding process and are not inconsistent with these Bidding Procedures, including auctioning subsets of the Purchased Assets first but making any "winning bid" on a subset of the Purchased Assets contingent upon the

outcome of the Auction of all of the Purchased Assets. The Debtors, in consultation with the Consultation Parties, are permitted, but not required, to ascribe a liquidation value to certain assets to assist the Debtors in comparing bids for a subset of the Purchased Assets against bids for all of the Purchased Assets, provided that any ascribed liquidation value shall not be determinative of the actual value of such Purchased Assets. If the Debtors believe that such value would be overly speculative under the circumstances, however, they may decline to assign any such liquidation values. Any rules developed by the Debtors will provide that all bids will be made and received in one room, on an open basis, and all other Qualified Bidders will be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder will be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid submitted in response to the Baseline Bid or to any successive bids made at the Auction will be fully disclosed to all other Qualified Bidders throughout the entire Auction, and each Qualified Bidder will be permitted to take what the Debtors and the Consultation Parties determine to be an appropriate amount of time to respond to the previous bid at the Auction.

The Debtors reserve the right to and may, after consultation with the Consultation Parties, reject at any time before entry of the relevant Sale Order (as defined below) any bid that, in the Debtors' judgment, is: (A) inadequate or insufficient; (B) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures or the terms and conditions of the Sale; or (C) contrary to the best interests of the Debtors and their estates; provided, however, that the Debtors shall not reject a bid or bids submitted by the DIP Lender, Senior Pre-Petition Lender, or their designated affiliate(s) in accordance with these Bidding Procedures on the ground that such bid is inadequate, insufficient, or contrary to the best interests of the Debtors and their estates.   In doing so, the Debtors may take into account the factors set forth above regarding the contents of a Qualified Bid.

Prior to the conclusion of the Auction, the Debtors, after consultation with the Consultation Parties, will: (A) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale; (B) identify the highest or otherwise best offer or collection of offers (the "Prevailing Bid"); (C) determine which Qualified Bid is the Prevailing Bid and which is the next highest or otherwise best bid (the "Back-Up Bid") for the Purchased Assets; and (D) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the Prevailing Bidder, the amount and other material terms of the Prevailing Bid and the identity of the party that submitted the Back-Up Bid (the "Back-Up Bidder").  At the Sale Hearing, the Debtors will present the Prevailing Bid and the Back-Up Bid to the Bankruptcy Court for approval.

No additional bids may be submitted or considered after the conclusion of the Auction.

**EACH BID - INCLUDING BIDS CONTAINED IN THE BID PACKAGE SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE QUALIFIED BIDDER(S) FROM THE TIME THE BID IS SUBMITTED UNTIL THE EARLIER OF 48 HOURS AFTER THE SALE OF THE ASSETS HAS CLOSED OR 30 DAYS AFTER THE CONCLUSION OF THE SALE HEARING.**

## VIII.    Acceptance of Qualified Bids

The Debtors presently intend to consummate the Sale with the Prevailing Bidder, or if the Prevailing Bidder cannot or refuses to consummate the Sale because of the breach or failure on the part of the Prevailing Bidder, then with the Back-Up Bidder.  However, the Debtors' presentation of the Prevailing Bid and the Back-Up Bid to the Bankruptcy Court for approval does not constitute the

Debtors' acceptance of such bid. The Debtors will be deemed to have accepted the Prevailing Bid or the Back-Up Bid, as applicable, only when such bid has been approved by the Sale Order.

If for any reason the Prevailing Bidder fails to consummate the purchase of the Purchased Assets, or any subset thereof, the Back-Up Bid may be deemed by the Debtors (after consultation with the Consultation Parties) to be the highest or best bid, and the Debtors and the Back-Up Bidder will thereafter effect the sale of the Purchased Assets to the Back-Up Bidder as soon as is commercially reasonable. If such failure to consummate the purchase is the result of a breach by the Prevailing Bidder, the Debtors shall have the right to retain the Good Faith Deposit until required to return it by an order of the Bankruptcy Court and shall reserve the right to seek all available damages from the Prevailing Bidder, including, but not limited to, with respect to the Good Faith Deposit.

## IX.    The Sale Hearing

On or before July 14, 2016, subject to any continuance or postponement by the Bankruptcy Court, the Bankruptcy Court shall conduct a hearing (the "Sale Hearing") to determine whether to approve the Sale of Purchased Assets free and clear of all liens, claims, interests, encumbrances and liabilities, including the assumption and assignment of certain executory contracts and unexpired leases as described in the applicable Purchase Agreement.

At the Sale Hearing, the Debtors will seek Bankruptcy Court Approval of the Sale of the Purchased Assets to the Prevailing Bidder and the Back-Up Bidder. In the event the Prevailing Bidder cannot or refuses to consummate the Sale because of the breach or failure on the part of the Prevailing Bidder, the Debtors will be permitted to close with the Back-Up Bidder without further order of the Bankruptcy Court. The Debtors' presentation to the Bankruptcy Court for approval of these particular bids does not constitute acceptance of any bids. The Debtors have accepted a bid only when the Bankruptcy Court, following the Sale Hearing, has approved the Sale and entered an order authorizing and approving the Sale, which shall be in form and substance acceptable to the Debtors and the Prevailing Bidder or the Back-Up Bidder, as applicable (the "Sale Order"). After consultation with the Consultation Parties, the Sale Hearing may be adjourned or rescheduled without notice or with limited and shortened notice to parties other than the Consultation Parties, including by (A) an announcement of such adjournment at the Sale Hearing or at the Auction or (B) the filing of a notice of adjournment with the Bankruptcy Court prior to the commencement of the Sale Hearing.

## X.    Terms of Sale; "As Is, Where Is"

Any Sale shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or the Debtors' chapter 11 estates, whether written or verbal, whether express, implied or by operation of law, except and solely to the extent expressly set forth in the Purchase Agreement of the Prevailing Bidder or the Back-Up Bidder, as applicable. Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Purchased Assets that are the subject of the Auction prior to making its bid, that it has relied solely upon its own independent review and investigation in making its bid. Except as otherwise provided in the Purchase Agreement of the Prevailing Bidder or the Back-Up Bidder, as applicable, all of the Debtors' right, title and interest in the Purchased Assets shall be sold free and clear of liens, claims, interests, encumbrances and liabilities as proposed in the form of Sale Order (collectively, "Liabilities"), with any Liabilities to attach to the proceeds of the Sale as permitted by law and provided in the proposed form of Sale Order.

## XI.    Closing

Except to the extent of any contrary provision in the Purchase Agreement of the Prevailing Bidder or the Back-Up Bidder, as applicable, the closing (the "Closing") shall occur on or before July 18, 2016, subject to the right of the Debtors and the Prevailing Bidder or the Back-Up Bidder, as applicable, to extend such date consistent with such party's Purchase Agreement and these Bidding Procedures.

**XII.    General**

The Debtors may, after consultation with the Consultation Parties, amend these Bidding Procedures or the bidding process at any time and from time to time in any manner that they determine will best promote the goals of the Bidding Procedures, including extending or modifying any of the dates described herein. The Debtors shall promptly notify parties in interest and Potential Bidders of any such modifications. No bidder has any rights against the Debtors, their estates, the Debtors' CRO, or any of the Debtors' other professionals by virtue of any modification of these Bidding Procedures, or by virtue of having or not having its bid accepted by the Debtors or approved by the Bankruptcy Court. To participate in the Auction, each Qualified Bidder will sign an acknowledgment of no rights or claims against the Debtors, their estates, the Debtors' CRO, or the Debtors' professionals for the foregoing.[4]

**XIII.    Return of Good Faith Deposit**

The Good Faith Deposits of all Qualified Bidders will be held in escrow by the Deposit Agent and while held in escrow will not become property of the Debtors' bankruptcy estates unless released from escrow pursuant to terms of the applicable escrow agreement or pursuant to further order of the Bankruptcy Court. The Deposit Agent will retain the Good Faith Deposits of the Prevailing Bidder and the Back-Up Bidder until the closing of the Sale unless otherwise ordered by the Bankruptcy Court. The Good Faith Deposits of the other Qualified Bidders will be returned within four business days of the entry of the Sale Order. At the closing of the Sale contemplated by the Prevailing Bid, the Prevailing Bidder will be entitled to a credit for the amount of its Good Faith Deposit. The Good Faith Deposit of the Back-Up Bidder will be released by the Debtors four (4) business days after the Closing of the Sale. Upon the return of the Good Faith Deposits, their respective owners will receive any and all interest that will have accrued thereon.

**XIV.    Consultation with Consultation Parties**

In the event that any Consultation Party or an affiliate of any of the foregoing, submits a Qualified Bid, including without limitation, the DIP Lender, Senior Pre-Petition Lender, or their designated affiliate(s), then such party shall cease to be a Consultation Party.

For the avoidance of doubt, if a member of the Creditors' Committee submits a Qualified Bid, the Creditors' Committee will continue to have Consultation Rights; provided, however, that the Creditors' Committee shall exclude such member from any discussions or deliberations regarding the sale of the Purchased Assets and shall not provide any information regarding the sale of the Purchased Assets to such member.

---

[4] Notwithstanding the foregoing, nothing herein is intended to, nor shall it, limit or alter the Debtors' obligations to the DIP Lender or Senior Pre-Petition Lender under the terms of the DIP Loan Documents, Senior Pre-Petition Loan Documents, or applicable orders of the Bankruptcy Court.

**XV.    No Modification to DIP Financing Order(s)**

Nothing herein is intended to or shall be deemed to vary, modify, alter or supersede in any way the terms of the Interim DIP Financing Order entered by the Bankruptcy Court (or any final order approving the DIP Financing, if entered by the Bankruptcy Court).

**XVI.    Reservation of Rights**

In consultation with the Consultation Parties, the Debtors reserve the right to amend or modify the proposed Bidding Procedures, including without limitation, the proposed Bid Deadline, Auction Date, and Sale Hearing date, in connection with the conditions or requirements of any Qualified Bidder (as defined in the Bidding Procedures) who may wish to be a "stalking horse bidder" for the Purchased Assets.

## EXHIBIT 1 TO BIDDING PROCEDURES

### ASSET PURCHASE AGREEMENT