UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AF-SOUTHEAST, LLC, *et al.*,[1] | Case No. 16-11008 (KG) |
| Debtors. | (Jointly Administered) |
| | Objection Date: May 9, 2016<br>Hearing Date: May 13, 2016 @ 10:00 am |

**LIMITED RESPONSE OF CERTAIN IRU GRANTEES TO MOTION OF THE DEBTORS FOR (I) AN ORDER (A) APPROVING BIDDING PROCEDURES; (B) SCHEDULING BID DEADLINE, AUCTION DATE, AND SALE HEARING AND APPROVING NOTICE THEREOF; AND (C) APPROVING PROCEDURES TO FIX CURE AMOUNTS RELATED TO ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASE AND APPROVING NOTICE THEREOF; AND (II) AN ORDER APPROVING CLEAR OF LIENS, CLAIMS, INTERESTS AND LIABILITIES AND (B) THE ASSUMPTION, SALE AND ASSIGNMENT TO BUYER OF CERTAIN CONTRACTS OF DEBTORS**

Southern Light, LLC ("Southern") and Planters Communications, LLC ("Planters") (collectively, the "IRU Grantees"), as and for their limited response and reservations of rights in connection with the above-noted motion of the Debtors [Docket No. 48] (the "Motion"), respectfully state as follows:

**BACKGROUND**

1. According to the Motion, the Debtors are engaged in the business of designing, constructing and operating an open access, physical layer, network-neutral co-location and dark fiber network. The Debtors' dark fiber network provides long-haul, multi-access points and short-haul dark fiber network systems to provide control of the underlying physical assets to network operators who subscribe to the Debtors' services.

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers, are: (i) AF-Southeast, LLC (8002); (ii) Allied Fiber – Florida, LLC (8111); and (iii) Allied Fiber – Georgia, LLC (2935).

2. The Debtors' completed network consists of various "colocation" facilities in Florida and Georgia which are spaced approximately every 60 miles along the Debtors' dark fiber network. The network consists of approximately 362 route miles in Georgia and 346 route miles in Florida (from Miami to Atlanta) and the colocation facilities consist of 1,200 square feet modular buildings with direct access to the dark fiber network.

3. Each of the IRU Grantees entered into so-called "indefeasible right-of-use" ("IRU") agreements with Allied Fiber, LLC, the non-debtor parent entity of the Debtors. Such IRU transactions have become standard in the telecommunications industry whereby the grantor grants an exclusive and "indefeasible" right to use specific dark fibers in the network for a specified time period (usually, as here, 20 years) in exchange for a one-time, upfront payment in full by the grantees. Each of the IRU Grantees was granted exclusive and indefeasible rights to their specific dark fiber in the network under these terms.

## LIMITED RESPONSE AND RESERVATION OF RIGHTS

4. In the Motion, the Debtors seek, at the first hearing, to establish bid procedures, various deadlines, a formal sale process and hearing dates. The IRU Grantees have no objection to this relief and support this portion of the Motion.

5. However, the Motion is vague on the assets and contracts to be included or excluded in the sale (with no schedules or lists attached) and the Motion makes no mention whatsoever of the IRUs and their status or treatment.[2] Moreover, the Motion provides that

---

[2] The Declaration of Scott Drake in Support of First Day Motions, dated April 20, 2016, briefly describes the IRUs in general and, at one point, refers to the IRUs as "leases". *See* Drake Declaration, ¶¶ 11-12. The Declaration further states that all assets of Allied Fiber, LLC were somehow assigned to the Debtors. The Declaration does not specify whether the IRUs were assigned and none of the IRU Grantees was given any notice of such purported assignment of their respective IRU to the Debtors. Until evidence is presented to substantiate that a valid assignment occurred, the IRUs may still remain with the non-debtor parent and may not be property of the bankruptcy estates.

within 5 days after approval of the bid and sale procedures, the Debtors shall send a notice of purported "executory" contracts available to be assumed and assigned to the potential buyer.

6.  As this Court is undoubtedly aware, IRUs are <u>not</u> executory contracts and are <u>not</u> capable of being assumed and assigned (or rejected) under 11 U.S.C. § 365.[3] Despite over 200 prior telecom related bankruptcy filings, the IRU Grantors have been unable to find even a single instance of an IRU being found to be "executory" or otherwise capable of rejection under Section 365. To the contrary, the leading decision on the status of IRUs in bankruptcy held that an IRU is not "executory" and cannot be rejected. <u>In re Worldcom, Inc.</u>, 343 B.R. 430 (Bankr. S.D.N.Y. 2006).

7.  The IRU Grantees strenuously object to any implicit, indirect or explicit attempt by Debtors to refer to the IRUs or treat the IRUs in any manner as an "executory" contract or a lease. No list or schedule of purported "executory" contracts or leases to be delivered pursuant to an order of this Court should contain any mention of the IRUs. Similarly, the IRU Grantees should not be deemed (now or in the future) to have (i) consented in any way or (ii) waived any rights to challenge the nature, status and treatment of their IRUs and to contest any attempt to treat the IRUs as "executory" for any purpose in these bankruptcy cases. In short, the mere procedural and scheduling aspects of the Motion should not be the vehicle for litigating and determining the ultimate character, nature and treatment of IRUs in bankruptcy – and nothing in the Motion should be deemed to impact the IRU Grantees in any respect and no dicta or advisory opinions should be given concerning the IRUs.

---

[3] The Debtors' remaining rights and interest in the IRUs might be transferrable to a buyer under Section 363 with the consent of the IRU Grantees under certain circumstances. The rights of the IRU Grantees are being fully reserved here.

8.  The IRU Grantees are hopeful that a successful sale will occur and the complex issues surrounding IRUs in bankruptcy will be moot. But the omissions and vagueness of the IRU details in the Motion and any sale related notices (and the failure of any IRU grantee to object thereto) should not be used as a "gotcha" which prejudices any IRU grantee in any potential future litigation concerning the IRUs.

9.  The IRU Grantees also expressly reserve their rights in all respects to object at the second hearing (i.e., the sale hearing) to the identity of any potential purchaser and the purported treatment of the IRUs.

*[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]*

**CONCLUSION**

**WHEREFORE**, the IRU Grantees respectfully submit that the IRUs should not be placed on any purported list of "executory" contracts or leases to be provided to any bidders or counter-parties (and instead should be placed on their own separate schedule or list of IRUs with no self-serving description or rhetoric of the Debtors accompanying such list of IRUs).  Additionally, the IRU Grantees expressly reserve their rights to challenge and object in any manner to the treatment of the IRUs, the terms of the sale and/or the potential Purchaser.

Dated:  May 9, 2016

Respectfully submitted,

Morgan, Lewis & Bockius LLP

*/s/ Jody C. Barillare*
Jody C. Barillare (Del. Bar No. 5107)
The Nemours Building
1007 North Orange St., Suite 501
Wilmington, DE  19801
Tel: 302-574-3000
Fax:  302-574-3001
E-mail:  jbarillare@morganlewis.com

Neil E. Herman
James O. Moore
101 Park Avenue
New York, New York 10178
Tel:  212-309-6000
Fax:  212-309-6001
E-mail: neil.herman@morganlewis.com
E-mail: james.moore@morganlewis.com

Attorneys for *Southern Light, LLC and Planters Communications, LLC*