# Exhibit "A"

Case 16-11008-KG Doc 100-1 Filed 05/13/16 Page 1 of 11

# BIDDING PROCEDURES[1]

These bidding procedures (the "Bidding Procedures") set forth the terms by which AF-Southeast, LLC, *et al.*, (collectively, the "Debtors" or the "Seller"), Debtors and debtors in possession may effectuate a sale (the "Sale") of substantially all of their assets (the "Purchased Assets") subject to the terms and conditions and in accordance with the process and procedures set forth herein. These Bidding Procedures were approved by an order (the "Bidding Procedures Order") entered on \_\_\_\_, 2016, by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in the following proceeding: *In re AF-Southeast, LLC et al.* Case No. 16-11008 (KG) (Jointly Administered).

## I. Important Dates, Contact Information, and Terms

The following dates and deadlines apply to the proposed Sale.

| | |
|---|---|
| **General Bid Deadline:** | \_\_\_\_, 2016 at 5 p.m. (prevailing ET) |
| **Auction:** | July 12, 2016 at 10 a.m. (prevailing ET) |
| **Sale Hearing:** | July 14, 2016 at \_\_\_\_ (prevailing ET) |
| **Sale Closing:** | on or before July 18, 2016 |

The key dates in the sale process may be extended by the Debtors in consultation with the Consultation Parties (defined below) or by the Bankruptcy Court for cause.

Parties interested in the Assets may contact the Debtors through PMCM LLC, their court-appointed Chief Restructuring Officer (the "CRO") by contacting: Michael E. Jacoby, Managing Director, PMCM, LLC, 110 Commons Court, Chadds Ford, PA 19317 Telephone: (610) 358-4700, Email: mjacoby@phoenixmanagement.com

"Consultation Parties" means, collectively, the Debtors and their professionals and advisors, the DIP Lender and its professionals and advisors and the Official Committee of Unsecured Creditors, if one is appointed in the Cases (the "Creditors' Committee"), and its professionals and advisors.

## II. Due Diligence and Participation

To participate in the sale process as a potential purchaser, conduct due diligence upon the Assets and be entitled to submit a bid for consideration hereunder, a party (each an "Interested Party") must deliver the following to the Debtors:

(A) an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors; and

---

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the Bidding Procedures Order, Bidding Procedures Motion or the Purchase Agreement, attached hereto as **Exhibit 1**. The Debtors are: AF-Southeast, LLC; Allied Fiber – Florida, LLC; and Allied Fiber – Georgia, LLC.

(B) a statement and other factual support demonstrating to the Debtors' reasonable satisfaction, after consultation with the Consultation Parties, that the Interested Party has a *bona fide* interest in purchasing the Assets or some subset of the Assets.

Upon satisfactory receipt of the items above, as determined by the Debtors in consultation with the Consultation Parties, then such Interested Party will be deemed a "Potential Bidder," and the Debtors will deliver to such Potential Bidder: (A) an information package containing information and financial data with respect to the Assets (the "Information Package"); and (B) access information for the Debtors' confidential electronic data room concerning the Assets (the "Data Room"). The identity of each Potential Bidder may be disclosed to any other Potential Bidders. The Debtors will deliver a list of all current Potential Bidders to the Consultation Parties within one (1) business day after each Potential Bidder is added.[2]

Until the business day immediately preceding the Bid Deadline, the Debtors will provide any Potential Bidder such due diligence access or additional information as the Debtors, in consultation with the Consultation Parties, determine to be reasonably requested and appropriate under the circumstances. In the event that any such due diligence material is in written form and has not previously been provided to any other Potential Bidder, the Debtors will provide such materials to all Potential Bidders to the extent practicable, as well as to the Consultation Parties. The Debtors retain the right to establish, maintain and make available a "virtual data room" containing due diligence material in written form, access to which shall be made available to all Potential Bidders.

Unless otherwise determined by the Debtors, in consultation with the Consultation Parties, the availability of additional due diligence to a Potential Bidder will cease if (A) the Potential Bidder does not become a Qualified Bidder or (B) the bidding process is terminated in accordance with its terms. Except as provided above with respect to the Information Package and access to the Data Room, neither the Debtors nor their representatives will be obligated to furnish any information of any kind whatsoever relating to the Purchased Assets to any party.[3]

A party may participate in the bidding process by submitting a bid to purchase less than all of the Purchased Assets. In addition, parties may participate in the bidding process by submitted a joint bid to purchase all, or less than all, of the Purchased Assets.

### III.  General Bid Deadline

A Potential Bidder that desires to make a bid shall deliver written and electronic copies of its bid in both PDF and Word format to the Notice Parties listed below so as to be received no later than 5:00 p.m. (prevailing Eastern Time) on _____, 2016 (the "General Bid Deadline").

The "Notice Parties" means each of the following: (A) the Debtors c/o Michael E. Jacoby, Managing Director, PMCM, LLC, 110 Commons Court, Chadds Ford, PA 19317 Telephone: (610) 358-4700, Email: mjacoby@phoenixmanagement.com; (B) proposed counsel to the Debtors, Fox Rothschild LLP, 2000 Market Street, 20th Floor, Philadelphia, PA 19103, Attention: Michael G. Menkowitz (mmenkowitz@foxrothschild.com) and Joshua T. Klein (jklein@foxrothschild.com);

---

[2] Notwithstanding the foregoing, nothing herein is intended to, nor shall it, limit or alter the Debtors' obligations to provide information to the DIP Lender or Senior Pre-Petition Lender under the terms of the DIP Loan Documents, Senior Pre-Petition Loan Documents, or applicable orders of the Bankruptcy Court.

[3] *See* note 2, *supra.*

(C) co-counsel to the DIP Lender, Neligan Foley LLP, 325 N. St. Paul, Suite 3600, Dallas, TX 75201, Attention: Patrick J. Neligan, Jr., (pneligan@neliganlaw.com) and John D. Gaither, Esq. (jgaither@neliganlaw.com); and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attention: Mark D. Collins (Collins@rlf.com) and Jason M. Madron (Madron@rlf.com); and (D) counsel to the Creditors' Committee, if one is appointed.

### IV.  Qualified Bids

Assuming that there is an Auction, a Potential Bidder will not be entitled to participate in any Auction or otherwise purchase the Assets, unless it shall have submitted a Qualified Bid by the General Bid Deadline in accordance with these Bidding Procedures that includes **all** of the following items (the "Bid Package"):

- (A) an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors;

- (B) The true identity of the party submitting the bid and details regarding any other parties participating in the bid;

- (C) A written acknowledgment by the Qualified Bidder and each participant in such bid that it/they agrees to all of the terms set forth in these Bidding Procedures;

- (D) Written evidence that the Qualified Bidder has obtained authorization and approval from its board of directors (or comparable governing body) with respect to the submission of its bid and acceptance of the terms set forth in these Bidding Procedures, or representation that no such authorization or approval is required; provided, however, that neither the DIP Lender nor the Senior Pre-Petition Lender, or their designated affiliate(s) shall be required to provide such information;

- (E) Audited (if in existence) or unaudited financial statements and/or other written evidence of a financing commitment or other evidence, satisfactory to the Debtors, in consultation with the Consultation Parties, of the financial ability to close under its asset purchase agreement within the deadline described above; provided, however, that neither the DIP Lender nor the Senior Pre-Petition Lender, or their designated affiliate(s) shall be required to provide such information;

- (F) A signed Purchase Agreement, in form and substance substantially similar to the form Asset Purchase Agreement attached hereto as Exhibit 1 and incorporated herein by reference, which shall contain a list of the unexpired leases and executory contracts to be assumed and assigned to the bidder;

- (G) the Potential Bidder will pay any and all cure costs associated with the assumption of any unexpired leases or executory contracts;

- (H) the bid is formal, binding and unconditional (except for those conditions expressly set forth in the applicable APA, including expressly stating any conditions relating to the assumption and assignment of contracts and leases) and is not subject to any due diligence or financing contingency and is irrevocable until the conclusion of the Auction, except to the extent that such qualified bid is the Prevailing Bid or Back-Up

    Bid, in which case each such bid shall remain open in conformity with these bidding procedures;

(I) does not entitle the Potential Bidder to any breakup fee, termination fee, expense reimbursement or similar type of payment or reimbursement and includes a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the Assets;

(J) a Good Faith Deposit (defined below); and

(K) the Qualified Bidder is received by the Bid Deadline.

  With the exception of the DIP Lender and Senior Pre-Petition Lender, or their designated affiliate(s), a Potential Bidder must deposit with either the Debtors or an escrow agent selected by the Debtors (the "Deposit Agent") a cash deposit equal to the greater of (i) $750,000 or (ii) three and one half (3.5%) percent of the cash purchase price set forth in the Purchase Agreement submitted by the Potential Bidder (any such deposit, a "Good Faith Deposit"). The Good Faith Deposit must be made by wire transfer and will be held by the Deposit Agent.

  If a bid is received and, in the Debtors' judgment, after consultation with the Consultation Parties, it is not clear whether the bid is a Qualified Bid, the Debtors and the Consultation Parties may consult with the Potential Bidder and seek additional information in an effort to establish whether or not a bid is a Qualified Bid.

  The Debtors shall provide to the Consultation Parties copies of each Bid Package received. A Bid Package received from a Potential Bidder that is determined by the Debtors, after consultation with the Consultation Parties, to meet the above requirements (or any modification to the above requirements made after consultation with the Consultation Parties) will be considered a "Qualified Bid," and each Potential Bidder that submits a Qualified Bid will be considered a "Qualified Bidder." For purposes of the Auction, the DIP Lender and Senior Pre-Petition Lender, or their designated affiliate(s), will each be deemed a Qualified Bidder without the requirement of any deposit but subject in all respects to the Credit Bidding section set forth below.

  A Qualified Bid and bids at the Auction may be valued by the Debtors, after consultation with the Consultation Parties, based upon factors such as: (A) the purported amount of the Qualified Bid, including the bid's impact on all constituents of the Debtors, any benefit to the Debtors' bankruptcy estates from any assumption of liabilities, the waiver of liabilities through a Credit Bid, and an analysis of other non-cash consideration; (B) the value to be provided to the Debtors under the Qualified Bid, including the net economic effect upon the Debtors' estates; (C) contingencies with respect to the Sale and the ability to close the proposed Sale without delay, and any incremental costs to the Debtors in closing delays; (D) the ability to obtain any and all necessary governmental approvals for the proposed transaction; and (E) any other factors the Debtors, after consultation with the Consultation Parties, may deem relevant.

  Except with respect to the DIP Lender and Senior Pre-Petition Lender, or their designated affiliate(s), the Debtors, in consultation with the Consultation Parties, reserve the right to impose additional terms and conditions with respect to all Qualified Bidders.

V. **Credit Bid**

For purposes of these Bidding Procedures and the Auction, the DIP Lender and Senior Pre-Petition Lender, or their designated affiliate(s), shall each be deemed a Qualified Bidder, and shall have the right to submit a credit bid pursuant to section 363(k) of the Bankruptcy Code up to the full amount of its allowed secured claim for the Purchased Assets at the Auction ("Credit Bid"). As a condition to Credit Bidding any portion of its secured claim, the DIP Lender and Senior Pre-Petition Lender, or their designated affiliate(s), shall include an offer to fund, in cash, at Closing, the Carve-out (as that term is defined in the Interim DIP Financing Order, or a later final order approving the DIP Financing) and any reasonable, allowed estate professional fees and expenses incurred and unpaid as of Closing. Notwithstanding the foregoing, nothing contained herein shall be deemed consent by the Creditors' Committee, if any, and/or any parties in interest, of the DIP Lender's, Senior Pre-Petition Lender's, or their designated affiliate(s)' ability to Credit Bid its secured claim and all such rights to object to Credit Bidding are hereby preserved.

## VI. Baseline Bid

The Debtors, after consultation with the Consultation Parties, will select what they determine to be the highest or best Qualified Bid (or collection of Qualified Bids) for the Purchased Assets (the "Baseline Bid") to serve as the starting point at the Auction. As soon as practicable, the Debtors will identify the Baseline Bid and provide to all Qualified Bidders copies of all Qualified Bids (with such distribution permissible by electronic means, including posting to the Data Room).

## VII. Auction

If more than one Qualified Bid is received by the General Bid Deadline, then the Debtors will conduct an auction (the "Auction") to take place at 10:00 a.m. (prevailing ET) on July 12, 2016, at the offices of Fox Rothschild LLP, 2000 Market Street, 20th Floor, Philadelphia, PA 19103, or such other time as the Debtors, after consultation with the Consultation Parties, may notify Qualified Bidders who have submitted Qualified Bids, as well as the parties listed in paragraph 2. of the Bidding Procedures Order.

Only Qualified Bidders and their designated agents will be eligible to participate at the Auction, subject to such modifications and limitations as the Debtors may impose in good faith, after consultation with the Consultation Parties. Professionals and/or other representatives of the Consultation Parties, a representative from the Office of the United States Trustee for the District of Delaware, and parties in interest will be able to attend and observe the Auction in accordance with Local Rule 6004-1.

At the Auction, participants will be permitted to increase their bids. Bidding on the Assets will start at the purchase price and terms proposed in the Baseline Bid, and will proceed thereafter in increments of $_____ (the "Minimum Overbid").

The Debtors may adopt rules, after consultation with the Consultation Parties, for the Auction at any time that the Debtors determine to be appropriate to promote the goals of the bidding process and are not inconsistent with these Bidding Procedures, including auctioning subsets of the Purchased Assets first but making any "winning bid" on a subset of the Purchased Assets contingent upon the outcome of the Auction of all of the Purchased Assets. The Debtors, in consultation with the Consultation Parties, are permitted, but not required, to ascribe a liquidation value to certain assets to assist the Debtors in comparing bids for a subset of the Purchased Assets against bids for all of the Purchased Assets, provided that any ascribed liquidation value shall not be determinative of the actual value of such Purchased Assets. If the Debtors believe that such value would be overly speculative under the circumstances, however, they may decline to assign any such liquidation values. Any rules

developed by the Debtors will provide that all bids will be made and received in one room, on an open basis, and all other Qualified Bidders will be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder will be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid submitted in response to the Baseline Bid or to any successive bids made at the Auction will be fully disclosed to all other Qualified Bidders throughout the entire Auction, and each Qualified Bidder will be permitted to take what the Debtors and the Consultation Parties determine to be an appropriate amount of time to respond to the previous bid at the Auction.

The Debtors reserve the right to and may, after consultation with the Consultation Parties, reject at any time before entry of the relevant Sale Order (as defined below) any bid that, in the Debtors' judgment, is: (A) inadequate or insufficient; (B) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures or the terms and conditions of the Sale; or (C) contrary to the best interests of the Debtors and their estates. In doing so, the Debtors may take into account the factors set forth above regarding the contents of a Qualified Bid.

Prior to the conclusion of the Auction, the Debtors, after consultation with the Consultation Parties, will: (A) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale; (B) identify the highest or otherwise best offer or collection of offers (the "Prevailing Bid"); (C) determine which Qualified Bid is the Prevailing Bid and which is the next highest or otherwise best bid (the "Back-Up Bid") for the Purchased Assets; and (D) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the Prevailing Bidder, the amount and other material terms of the Prevailing Bid and the identity of the party that submitted the Back-Up Bid (the "Back-Up Bidder"). At the Sale Hearing, the Debtors will present the Prevailing Bid and the Back-Up Bid to the Bankruptcy Court for approval.

No additional bids may be submitted or considered after the conclusion of the Auction.

**EACH BID SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE QUALIFIED BIDDER(S) FROM THE TIME THE BID IS SUBMITTED UNTIL THE CONCLUSION OF THE AUCTION, EXCEPT TO THE EXTENT THAT SUCH QUALIFIED BID IS THE PREVAILING BID OR BACK-UP BID, IN WHICH CASE EACH SUCH BID SHALL REMAIN OPEN IN CONFORMITY WITH THESE BIDDING PROCEDURES.**

### VIII.  Acceptance of Qualified Bids

The Debtors presently intend to consummate the Sale with the Prevailing Bidder, or if the Prevailing Bidder cannot or refuses to consummate the Sale because of the breach or failure on the part of the Prevailing Bidder, then with the Back-Up Bidder. However, the Debtors' presentation of the Prevailing Bid and the Back-Up Bid to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of such bid. The Debtors will be deemed to have accepted the Prevailing Bid or the Back-Up Bid, as applicable, only when such bid has been approved by the Sale Order.

If for any reason the Prevailing Bidder fails to consummate the purchase of the Purchased Assets, or any subset thereof, the Back-Up Bid may be deemed by the Debtors (after consultation with the Consultation Parties) to be the highest or best bid, and the Debtors and the Back-Up Bidder will thereafter effect the sale of the Purchased Assets to the Back-Up Bidder as soon as is commercially reasonable. If such failure to consummate the purchase is the result of a breach by the Prevailing

Bidder, the Debtors shall have the right to retain the Good Faith Deposit until required to return it by an order of the Bankruptcy Court and shall reserve the right to seek all available damages from the Prevailing Bidder, including, but not limited to, with respect to the Good Faith Deposit.

## IX. The Sale Hearing

On or before July 14, 2016, subject to any continuance or postponement by the Bankruptcy Court, the Bankruptcy Court shall conduct a hearing (the "Sale Hearing") to determine whether to approve the Sale of Purchased Assets free and clear of all liens, claims, interests, encumbrances and liabilities, including the assumption and assignment of certain executory contracts and unexpired leases as described in the applicable Purchase Agreement.

At the Sale Hearing, the Debtors will seek Bankruptcy Court Approval of the Sale of the Purchased Assets to the Prevailing Bidder and the Back-Up Bidder. In the event the Prevailing Bidder cannot or refuses to consummate the Sale because of the breach or failure on the part of the Prevailing Bidder, the Debtors will be permitted to close with the Back-Up Bidder without further order of the Bankruptcy Court. The Debtors' presentation to the Bankruptcy Court for approval of these particular bids does not constitute acceptance of any bids. The Debtors have accepted a bid only when the Bankruptcy Court, following the Sale Hearing, has approved the Sale and entered an order authorizing and approving the Sale, which shall be in form and substance acceptable to the Debtors and the Prevailing Bidder or the Back-Up Bidder, as applicable (the "Sale Order"). After consultation with the Consultation Parties, the Sale Hearing may be adjourned or rescheduled without notice or with limited and shortened notice to parties other than the Consultation Parties, including by (A) an announcement of such adjournment at the Sale Hearing or at the Auction or (B) the filing of a notice of adjournment with the Bankruptcy Court prior to the commencement of the Sale Hearing.

## X. Terms of Sale; "As Is, Where Is"

Any Sale shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or the Debtors' chapter 11 estates, whether written or verbal, whether express, implied or by operation of law, except and solely to the extent expressly set forth in the Purchase Agreement of the Prevailing Bidder or the Back-Up Bidder, as applicable. Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Purchased Assets that are the subject of the Auction prior to making its bid, that it has relied solely upon its own independent review and investigation in making its bid. Except as otherwise provided in the Purchase Agreement of the Prevailing Bidder or the Back-Up Bidder, as applicable, all of the Debtors' right, title and interest in the Purchased Assets shall be sold free and clear of liens, claims, interests, encumbrances and liabilities as proposed in the form of Sale Order (collectively, "Liabilities"), with any Liabilities to attach to the proceeds of the Sale as permitted by law and provided in the proposed form of Sale Order.

## XI. Closing

Except to the extent of any contrary provision in the Purchase Agreement of the Prevailing Bidder or the Back-Up Bidder, as applicable, the closing (the "Closing") shall occur on or before July 18, 2016, subject to the right of the Debtors and the Prevailing Bidder or the Back-Up Bidder, as applicable, to extend such date consistent with such party's Purchase Agreement and these Bidding Procedures.

## XII. General

The Debtors may, after consultation with the Consultation Parties, amend these Bidding Procedures or the bidding process at any time and from time to time in any manner that they determine will best promote the goals of the Bidding Procedures, including extending or modifying any of the dates described herein, but only to the extent that such modifications are non-material; any material modifications will require Bankruptcy Court approval. The Debtors shall promptly notify parties in interest and Potential Bidders of any such modifications by over-night mail. No bidder has any rights against the Debtors, their estates, the Debtors' CRO, or any of the Debtors' other professionals by virtue of any modification of these Bidding Procedures, or by virtue of having or not having its bid accepted by the Debtors or approved by the Bankruptcy Court. To participate in the Auction, each Qualified Bidder will sign an acknowledgment of no rights or claims against the Debtors, their estates, the Debtors' CRO, or the Debtors' professionals for the foregoing.[4]

## XIII. Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders will be held in escrow by the Deposit Agent and while held in escrow will not become property of the Debtors' bankruptcy estates unless released from escrow pursuant to terms of the applicable escrow agreement or pursuant to further order of the Bankruptcy Court. The Deposit Agent will retain the Good Faith Deposits of the Prevailing Bidder and the Back-Up Bidder until the closing of the Sale unless otherwise ordered by the Bankruptcy Court. The Good Faith Deposits of the other Qualified Bidders will be returned within four (4) business days of the entry of the Sale Order. At the closing of the Sale contemplated by the Prevailing Bid, the Prevailing Bidder will be entitled to a credit for the amount of its Good Faith Deposit. The Good Faith Deposit of the Back-Up Bidder will be released by the Debtors four (4) business days after the Closing of the Sale. Upon the return of the Good Faith Deposits, their respective owners will receive any and all interest that will have accrued thereon.

## XIV. Consultation with Consultation Parties

In the event that any Consultation Party or an affiliate of any of the foregoing, submits a Qualified Bid, including without limitation, the DIP Lender, Senior Pre-Petition Lender, or their designated affiliate(s), then such party shall cease to be a Consultation Party.

For the avoidance of doubt, if a member of the Creditors' Committee submits a Qualified Bid, the Creditors' Committee will continue to have Consultation Rights; provided, however, that the Creditors' Committee shall exclude such member from any discussions or deliberations regarding the sale of the Purchased Assets and shall not provide any information regarding the sale of the Purchased Assets to such member.

## XV. No Modification to DIP Financing Order(s)

Nothing herein is intended to or shall be deemed to vary, modify, alter or supersede in any way the terms of the Interim DIP Financing Order entered by the Bankruptcy Court (or any final order approving the DIP Financing, if entered by the Bankruptcy Court).

---

[4] Notwithstanding the foregoing, nothing herein is intended to, nor shall it, limit or alter the Debtors' obligations to the DIP Lender or Senior Pre-Petition Lender under the terms of the DIP Loan Documents, Senior Pre-Petition Loan Documents, or applicable orders of the Bankruptcy Court.

XVI. **<u>Reservation of Rights</u>**

In consultation with the Consultation Parties, the Debtors reserve the right to amend or modify the proposed Bidding Procedures, including without limitation, the proposed Bid Deadline, Auction Date, and Sale Hearing date, in connection with the conditions or requirements of any Qualified Bidder (as defined in the Bidding Procedures) who may wish to be a "stalking horse bidder" for the Purchased Assets, but only to the extent that such modifications are non-material; any material modifications will require Bankruptcy Court approval.

## EXHIBIT 1 TO BIDDING PROCEDURES

## ASSET PURCHASE AGREEMENT